THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR12-0237-JCC |
| Plaintiff, | ORDER |
| v. | |
| HERMAN J. ROCHE, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Herman Roche's motion for compassionate release (Dkt. Nos. 1206, 1207-1[1]), the parties' motions to seal (Dkt. Nos. 1208, 1216), the parties' motions for leave to file overlength briefs (Dkt. Nos. 1214, 1219), and Defendant's motion for leave to file a response to the Government's notice of supplemental authorities (Dkt. No. 1223). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motions (Dkt. Nos. 1206, 1207-1, 1208, 1214, 1216, 1219, 1223) for the reasons explained herein.

//

---

[1] Docket Number 1207 is a notice of errata attaching a corrected motion for compassionate release (Dkt. No. 1207-1) that includes a required redaction. Where the Court cites to Mr. Roche's motion for compassionate release, the Court will cite to the redacted version (Dkt. No. 1207-1).

ORDER
CR12-0237-JCC
PAGE - 1

## I. BACKGROUND

In 2013, Mr. Roche pleaded guilty to conspiracy to distribute controlled substances and conspiracy to engage in money laundering. (Dkt. Nos. 637, 640, 683.) He led a large conspiracy (involving 25 codefendants) distributing prescription opiates. (*See* Dkt. No. 640 at 5–6.) In 2014, the Court imposed a sentence of 144 months of confinement followed by three years of supervised release. (Dkt. No. 751.) Mr. Roche is serving his sentence at FCI Sheridan. He has served approximately eight years of his twelve-year sentence, and his projected release date is in December 2022. (Dkt. No. 1207-1 at 2–3.)

Mr. Roche moves for compassionate release under 18 U.S.C. § 3582(c)(1) because he suffers from heart disease and obesity, two conditions that place him at higher risk of complications from COVID-19. (*See generally* Dkt. No. 1207-1.) Since 2016, Mr. Roche has had two episodes of myocardial infarction (heart attack), which both required the placement of stents. (*Id.* at 3.) He requests release to the home of his friend, who is also the mother of his oldest child, which U.S. Probation approves. (Dkt. Nos. 1220 at 5, 1218 at 2.) The Government concedes that Mr. Roche's heart condition and obesity amount to extraordinary and compelling reasons but argues that Mr. Roche presents a danger to the community and that the 18 U.S.C. § 3553(a) factors do not warrant release. (*See generally* Dkt. No. 1215.)

## II. DISCUSSION

### 1. Motion for Compassionate Release

#### A. Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's relevant policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States

Sentencing Guidelines ("USSG") § 1B1.13. The policy statement also directs a court to consider the 18 U.S.C. § 3553(a) factors in deciding whether compassionate release is appropriate. USSG § 1B1.13 cmt. n.4. Taken together, the policy statement and 18 U.S.C. § 3582(c)(1)(A) establish three requirements that must be satisfied before reducing a defendant's sentence: extraordinary and compelling reasons must warrant release, a defendant cannot represent a danger to the community upon release, and any reduction in the defendant's sentence must be consistent with 18 U.S.C. § 3553(a).[2] *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. The defendant bears the burden of making this showing. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020).

### B.   Extraordinary and Compelling Reasons for Release

Medical conditions may represent extraordinary and compelling reasons if an inmate "suffer[s] from a serious physical or medical condition . . . that substantially diminishes the [defendant's] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 cmt. n.1(A). When an inmate has health conditions that make them significantly more vulnerable to complications from COVID-19, that likewise may constitute an extraordinary and compelling circumstance. *See United States v. Cosgrove*, 454 F. Supp. 3d 1063, 1067 (W.D. Wash. 2020); *United States v. Dorsey*, 461 F. Supp. 3d 1062, 1065 (W.D. Wash. 2020).

As the Government concedes, Mr. Roche's medical conditions put him at significant risk of severe complications from COVID-19. It is undisputed that Mr. Roche has suffered two major cardiac events, suffers from obesity and coronary heart disease, and the Centers for Disease Control and Prevention recognize his conditions as increasing the risk of severe illness from COVID-19. (*See* Dkt. No. 1215 at 9, 1206-2 at 2–3, 1209-1). At a cardiac consultation in

---

[2] As a threshold matter, a defendant must also demonstrate that he has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). *See United States v. Van Sickle*, 2020 WL 2219496, slip op. at 3 (W.D. Wash. 2020). A defendant must show that he exhausted administrative remedies or waited 30 days after filing a request with the warden before filing the instant motion. *Id.* Mr. Roche has made this showing. (*See* Dkt. Nos. 1206-1, 1215 at 9.)

February, it was recommended that Mr. Roche have a stress echocardiogram on a "next available" basis, but the echocardiogram had not occurred as of the time of the instant motion. (Dkt. Nos. 1206-2 at 2, 1210 at 1.)

While acknowledging that Mr. Roche is at higher risk of complications if he contracts COVID-19, the Government argues that Mr. Roche's risk of contracting COVID-19 is no more significant in a Bureau of Prisons (BOP) facility than in the community, citing to the precautions the FCI-Sheridan facility is taking to protect the health and safety of inmates. (*See* Dkt. Nos. 1215 at 11, 1222, 1222-1, 1222-2.) Presently, there are five confirmed inmate cases and ten confirmed staff cases at FCI-Sheridan. *See* https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 17, 2020). But these past months have shown that, even with precautions in place, COVID-19 can spread rapidly in prisons because, with their tight quarters and unavoidable contact between inmates and staff, prisons are the perfect breeding ground for the virus. *See United States v. Pippin*, Case No. CR16-0266-JCC, Dkt. No. 122 at 2 (W.D. Wash. 2020). For example, at FCI-Lompac, the number of positive cases among inmates rose from 51 to 885 over a 16-day period in May. *See id*. Dkt. Nos. 117 at 2–5, 122 at 2. Even if FCI-Sheridan presently has relatively low numbers of confirmed positive cases, the risk of a larger outbreak still poses real danger to Mr. Roche.

Because Mr. Roche is particularly susceptible to complications from COVID-19, the Court FINDS that there are extraordinary and compelling reasons to release him from prison. *See* USSG § 1B1.13 cmt. n.1(A)(ii)(I).

  **C.**  **Danger to the Community**

Having found that there are extraordinary and compelling reasons to release Mr. Roche, the Court turns to whether he presents a danger to the safety of any other person or to the community. *See* USSG § 1B1.13(2). In assessing the danger Mr. Roche poses, the Court looks to the nature and circumstances of his underlying offense, the weight of the evidence against him, his history and characteristics, and the nature of the danger that his release would pose to any

person or the community. 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2).

Mr. Roche's crime was no doubt serious and his role was significant. Mr. Roche was the leader of a drug-trafficking operation involving 25 codefendants that brought a large quantity of prescription pills to this region and generated substantial proceeds for the members of the conspiracy. (Dkt. No. 640 at 5–6.) Mr. Roche was overheard on wiretaps directing associates to travel to California to pick up pills, and once the drugs arrived in Western Washington, Mr. Roche distributed them to numerous street-level dealers in the greater Seattle area. (*Id.*) Without minimizing the seriousness of this activity and the devastating impact of illegal opiates, the Court recognizes that Mr. Roche's conviction did not involve the gun activity or violence often resulting from operations of this scale. While several of Mr. Roche's codefendants (street level dealers) were arrested with firearms, the Court found at sentencing that there was insufficient evidence to support a weapons enhancement for Mr. Roche. (Dkt. Nos. 751, 849.) Similarly, while Mr. Roche has a lengthy criminal history, that history involves primarily drug offenses rather than violent crimes.

Further, Mr. Roche has served eight years of his sentence and during that time, has only had one disciplinary infraction, which involved using marijuana. While in prison, he has made efforts toward rehabilitation, including taking classes in job readiness, business and finance, sanitation technology, and health nutrition. If released, Mr. Roche will live in a stable environment with the mother of his oldest child and additional conditions of supervised release can mitigate a risk of recidivism and adequately protect the safety of the community. Under the circumstances, the Court FINDS that Mr. Roche is not a danger to the safety of any other person or to the community.

**D.     18 U.S.C. § 3553(a) Factors**

In determining whether to grant Mr. Roche compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must also consider any relevant factors set forth under 18 U.S.C. § 3553(a). *See* USSG. § 1B1.13. These factors include the nature and circumstances of the

underlying offense, the need for the sentence imposed, the kinds of sentences available, the applicable sentencing range, pertinent policy statements, and avoidance of sentencing disparities. *See* 18 U.S.C. § 3553(a).

Mr. Roche's offense warranted significant prison time. Under ordinary circumstances, his offense would demand that he serve the final two years of his twelve-year prison sentence. But the circumstances today are not ordinary. The conditions of incarceration during the pandemic are difficult for all inmates, and for Mr. Roche, they also pose a risk to his life. The Court could not have foreseen the emergence of a global pandemic when Mr. Roche was sentenced in 2014. Having served two-thirds of his sentence and spent a significant amount of time—eight years— in prison, early release from confinement would not undermine the goals of sentencing. To the contrary, potentially risking Mr. Roche's life would not promote respect for the law or constitute just punishment for the underlying offense. Additionally, early release from confinement will not result in sentencing disparities as 23 of the 25 codefendants in this case have already been released. The only codefendant remaining in prison had a lengthy criminal history that included weapons offenses and violent crimes, and his sentence included time for possession of a stolen firearm. (*See* Dkt. No. 1171 at 4–5.) Accordingly, the Court FINDS that the factors set forth in 18 U.S.C. § 3553(a) favor release when considered in conjunction with Mr. Roche's extraordinary and compelling circumstances. The Court therefore REDUCES Mr. Roche's term of imprisonment to time served.

### E. Additional Term of Supervised Release and Additional Conditions

While 18 U.S.C. § 3582(c)(1)(A) authorizes a court to reduce a defendant's term of imprisonment, the statute allows a court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." The Court finds that an additional term of supervised release would adequately balance the seriousness of Mr. Roche's offense and the need for his original sentence with the extraordinary and compelling circumstances that warrant his release. Therefore, the Court

ORDER
CR12-0237-JCC
PAGE - 6

IMPOSES an additional term of supervised release commensurate with the balance of Mr. Roche's remaining term of imprisonment as of the date this order is issued. This term of supervised release shall be followed by the previously-imposed three years of supervised release.

The additional term of supervised release shall include a condition of home confinement for the first 24 months. Mr. Roche shall participate in the location monitoring program with Global Positioning Satellite technology via mobile application during the additional 24 months of supervised release. In the event Mr. Roche does not have a cell phone, then Active Positioning Satellite technology shall be used instead. During this time Mr. Roche is restricted to his residence except for employment, religious services, medical, legal reasons, or as otherwise approved by the location monitoring specialist. Mr. Roche shall abide by all program requirements, and must contribute towards the costs of the services, to the extent financially able, as determined by the location monitoring specialist.

The additional term of supervised release shall also include an additional condition, as recommended by U.S. Probation, that:

> The defendant shall not be self-employed nor shall the defendant be employed by friends, relatives, associates or persons previously known to the defendant, unless approved by the U.S. Probation Officer. The defendant will not accept or begin employment without prior approval by the U.S. Probation Officer and employment shall be subject to continuous review and verification by the U.S. Probation Office. The defendant shall not work for cash and the defendant's employment shall provide regular pay stubs with the appropriate deductions for taxes.

**2. Motions to Seal, Motions to File Overlength Briefs, and Motion to file Response**

Mr. Roche and the Government each move to maintain under seal exhibits containing Mr. Roche's medical records (Dkt. Nos. 1208, 1216). The Court starts from the position that "[t]here is a strong presumption of public access to [its] files." W.D. Wash. Local Civ. R. 5(g)(3); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). To overcome that presumption, a party seeking to seal a judicial record must show "compelling reasons" to seal the record if it relates to a dispositive pleading. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180

(9th Cir. 2006). Here, the exhibits contain Defendant's confidential and highly personal medical information. (Dkt. Nos. 1209, 1217.) The Court FINDS that there is a compelling interest in maintaining the confidentiality of such records and that interest outweighs the public's interest in their disclosure. *See Kamakana*, 447 F.3d at 1179.

Additionally, the Government moves to file a 14-page response brief (Dkt. No. 1214) and Mr. Roche moves to file a nine-page reply brief (Dkt. No. 1219). The Court FINDS that a response brief and a reply brief of these respective lengths is reasonable in these circumstances and GRANTS the motions.

Finally, Mr. Roche and the Government each provided the court with a notice of supplemental authorities (Dkt. Nos. 1221, 1222). Mr. Roche filed a response to the Government's notice (Dkt. No. 1224), along with a motion for leave to submit the response (Dkt. No. 1223). The Government has not opposed the request. Accordingly, the Court GRANTS the motion.

## III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Roche's motion for compassionate release (Dkt. Nos. 1206, 1207-1), the parties' motions to seal (Dkt. Nos. 1208, 1216), the parties' motions for leave to file overlength briefs (Dkt. Nos. 1214, 1219), and Defendant's motion for leave to file a response to the Government's notice of supplemental authorities (Dkt. No. 1223). The Court further ORDERS:

1. Mr. Roche's term of imprisonment is REDUCED to time served.
2. The Court IMPOSES an additional term of supervised release commensurate with the balance of Mr. Roche's remaining term of imprisonment as of the date this order is issued, to be followed by the previously-imposed period of three years of supervised release.
3. The additional term of supervised release shall include a condition of home confinement for the first 24 months as set forth in this order.

4. The additional term of supervised release shall include the following additional condition:

   The defendant shall not be self-employed nor shall the defendant be employed by friends, relatives, associates or persons previously known to the defendant, unless approved by the U.S. Probation Officer. The defendant will not accept or begin employment without prior approval by the U.S. Probation Officer and employment shall be subject to continuous review and verification by the U.S. Probation Office. The defendant shall not work for cash and the defendant's employment shall provide regular pay stubs with the appropriate deductions for taxes.

5. The Clerk is DIRECTED to maintain Docket Numbers 1209 and 1217 under seal.

6. The Court ORDERS the Bureau of Prisons to release Mr. Roche for placement according to the release plan approved by U.S. Probation 14 days from the date of this order to accommodate a quarantine period. If Mr. Roche tests positive for COVID-19 at any time during this quarantine period, BOP must notify the Government who will immediately notify the Court so this Order can be modified appropriately.

7. Mr. Roche is ORDERED to contact the U.S. Probation Office within 24 hours of his release and follow its instructions.

DATED this 18th day of December 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE